### STATE *v*. J. L. YARBOROUGH and others.

The distribution of judicial powers, by Art. IV, of the Constitution, is a virtual repeal of all laws giving jurisdiction to Justices of the Peace in case of Forcible Entry and Detainer; except for the binding of trespasers to the Superior Court, to answer a criminal charge.

*Therefore*, where four or more men enter upon premises in the actual possession of another by virtue of a warrant and proceedings before a magistrate, which are a nullity, and eject such person and his family from the house they were occupying, they are guilty of a forcible trespass.

(*Credle* v. *Gibbs*, 65 N. C. Rep. 192; *State* v. *Hanks*, 66 N. C. Rep. 613; *State* v. *Ellen*, 68 N. C. Rep. 282; and *Perry* v. *Tupper*, this Term, cited and approved.)

INDICTMENT, (Forcible Trespass,) tried before *Logan, J.*, at Fall Term, 1873, of. CLEVELAND Superior Court..

On the trial below, the jury found the following special verdict :

One Jordan Jenkins did, on the 20th of December, 1872,

lease in writing the land upon which the trespass is alleged to have been committed, from one Ben Bowen. Bowen and Jenkins erected a house on the land, and Jenkins soon there-after moved into the house with his family, occupying the same peaceably and unmolested for about seven weeks; at the end of which time, an officer summoned him to trial at the house of the defendant Yarborough, which was near by. Yarborough had before that demanded the premises of Jenkins' wife, he not being at home, and previous to that demand, had forbidden Bowen to enter on the land. The proceedings at the trial which took place at Yarborough's, were offered by defendants, and after objection by the Solicitor, admitted by the Court. (These proceedings do not accompany the case.)

The jury likewise find as a fact, that immediately after the trial, and in pursuance of the judgment rendered therein, the defendants went to the house of Jenkins and expelled him and family, and carried his household goods into the woods, at the same time putting Yarborough into possession.

Yarborough on the trial, claimed the title to the premises, of which Jenkins exhibited a written lease from Bowen for the year 1873, Bowen also claiming to have the title.

Two years before this proceeding, Bowen leased the same land to his son in-law, who cultivated it, and Bowen was in the habit of getting timber from the land without interruption up to the time of the ejectment of Jenkins. That after Bowen's son-in-law had cultivated it, the defendant, Yar-borough, had sown a crop of oats on the premises, a part of which Bowen cut and carried away as an equivalent for rent, although forbidden by Yarborough to enter on the premises without his consent. That in the fall of 1872, Yarborough again sowed oats, which were there when Jenkins entered, and whose stock destroyed them.

The jury further find, that defendant Yarborough sued out the proceedings before the magistrate, was present and assisted in removing the household things when brought to the door of the house ; that the defendant, Smith, was the magistrate who

tried the case, and was present and also assisted, and that the remaining defendants were the jurors. That there was no malice in the proceeding or corrupt motive. And that at the time Jenkins entered upon the premises, there was a suit pending in the Superior Court in regard to the title, Bowen being plaintiff therein and Yarborough defendant.

If from the foregoing facts the Court be of opinion that the defendants were guilty, then the jury find them guilty; but if in law the defendants are not guilty as charged, then the jury find them not guilty.

His Honor being of opinion that the defendants were not guilty, the jury rendered their verdict accordingly. Judgment and appeal by the State.

*Attorney General Hargrove,* for the State, cited and relied on Chit. Crim. Law, Vol. 3, 1135; no excuse that defendants enter to enforce a lawful claim. Bishop's Crim. Law, Vol. 1, 477, 479.

*L. W. Barringer,* with whom was *R. T. Gray,* for defendants:

As to the jurisdiction of the magistrate:

1. The magistrate and the other defendants acted under and by authority of chap. 29, Battle's Revisal.

2. It is in the nature of a criminal proceeding before a magistrate to dispossess an intruder. The title did not come in question; it was being investigated elsewhere in a Superior Court.

2. Jurisdiction of a magistrate not a nullity. *Dulin* v. *Howard,* 66 N. C. Rep. 433.

Were not forbidden:

1. "The statute of '65–'66 was made to keep off interlopers if they intruded after being forbidden." *State* v. *Hanks,* 66, N. C. Rep. 613. Acted with no malice or intent of doing wrong, but in ignorance, under color of judicial proceedings. *State* v. *Hanks,* 66 N. C. Rep. 614; *State* v. *Ellen,* 68 N. C.

Rep. 282, and case cited; *State* v. *Dodson*, 6 Caldwell's Tenn. Rep. Not liable criminally, but, if at all, civilly. *State* v. *Dodson*, 6 Caldwell's Tenn. Rep. Chap. 29, Battle's Rev., (now existing law,) saves magistrates, officers, jurors, party from criminal indictment.

SETTLE, J. The distribution of judicial powers, by Article IV of the Constitution, is a virtual repeal of all laws giving jurisdiction to Justices of the Peace in cases of forcible entry and detainer, except for the purpose of binding trespassers over to the Superior Court to answer a criminal charge. *Perry* v. *Tupper*, at this term. We have then an indictment, at common law, for a forcible entry, made in 1873, and the defence relied upon is a certain proceeding had before a Justice of the Peace, under the statute of forcible entry and detainer. Rev. Code, ch. 49, which had been repealed in 1868 by the Constitution.

A Justice of the Peace has now no jurisdiction where the title to real estate shall be in controversy. But he may have jurisdiction where the title does not come in question, as in the case where a tenant holds over after the expiration of his term; for there, by reason of the privity of estate, the tenant is estopped to deny the title of the landlord; and before he can take advantage of a defect in the landlord's title, the premises must be restored to the landlord. *Creedle* v. *Gibbs*, 65 N. C. 192. But forcible entry is an offence, indictable at common law, without regard to any statute, English or American.

No one has a right, at common law, to enforce a claim, however just, by the commission of a breach of the public order and tranquility. Bishop's Crim. Law, sec. 464.

Upon the argument we were referred by the defendant's counsel to the cases of *State* v. *Hanks*, 66 N. C. 613, and *State* v. *Ellen*, 68 N. C. 282, where the defendants were held to be not guilty, because they entered under a *bona fide* claim of title; but it will be observed that they were indicted under the act of 1866, ch. 60, (Bat. Rev. ch. 32, sec. 116) which so

far from diminishing the class of indictable trespasses, has greatly enlarged it, and subjected to criminal prosecution were casual trespassers, or "interlopers," to use the expressive term of Justice BOYDEN in *State* v. *Hanks,* who have been forbidden to enter on the premises of another. It is true no clause of the act declares that "if any person not being the present owner or *bona fide* claimant of such premises shall wilfully and unlawfully enter thereon, and carry off or be engaged in the act of carry off any wood or other kind of property what-soever, growing or being thereon, the same being the property of the owner of the premises, or under his control, keeping or care, such person shall, if the act be done with felonious intent, be deemed guilty of larceny, and punished as for that offence. And if not done with such intent, he shall be deemed guilty of a misdemeanor.

This act is so badly worded as scarcely to be intelligible, and the saving in favor of *bona fide* claimants, is only found in in the clause which imposes the pains and penalties of larceny upon certain acts of trespass. This act cannot be tortured to mean that where four men come upon premises, in the actual possession of another, without color of authority, (for the proceedings before the Justice of the Peace, under which the defendants justify, are an absolute nullity for the purposes of protection,) and eject him and his family from the house they are occupying, and carry his effects into the woods, they shall not be indicted.

It cannot be that the Legislature intended that every *bona fide* claimant of land should take the redress of his real or supposed grievances into his own hands.

The judgment of the Superior Court is reversed. Let this be certified to the end that the Superior Court may proceed to judgment upon the special verdict.

PER CURIAM.                    Judgment reversed.