74 S.E.2d 602 (1953)
237 N.C. 205
STATE
v.
NORMAN.
No. 76.
Supreme Court of North Carolina.
February 25, 1953.
*605 Atty. Gen. Harry McMullan and Asst. Atty. Gen. Claude L. Love, for the State, appellant.
Bailey & Bailey, Plymouth, for defendant, appellee.
ERVIN, Justice.
It seems advisable to make certain observations at the outset. The defendant is charged with simple assault. State v. Myrick, 202 N.C. 688, 163 S.E. 803. A simple assault is a misdemeanor punishable by a fine not exceeding $50 or imprisonment not exceeding thirty days. G.S. § 14-33. Under Section 12 of Article I of the North Carolina Constitution and G.S. § 15-137, a person charged with the commission of a misdemeanor cannot be tried initially in the superior court except upon an indictment found by a grand jury, unless he waives indictment in accordance with regulations prescribed by the Legislature. State v. Thomas, 236 N.C. 454, 73 S.E.2d 283.
Chapter 589 of the 1951 Session Laws is certainly sufficient in phraseology to confer upon the Superior Court of Washington County plenary power to try this case on an indictment found by a grand jury. Hence the appeal presents for decision the question whether or not Chapter 589 of the 1951 Session Laws constitute a valid exertion by the General Assembly of its constitutional authority to legislate.
The answer to this question is to be found in relevant provisions of the organic law specifying how the judicial power of the State may be exercised. These provisions and certain resultant rules are stated in summary fashion in the numbered paragraphs which immediately follow.
1. Under Sections 2 and 3 of Article IV of the State Constitution, the judicial power of North Carolina is vested in these tribunals: (1) The State Senate sitting as a court for the trial of impeachments; (2) the Supreme Court; (3) the superior courts; (4) the courts of justices of the peace; and (5) such other courts inferior to the superior courts as may be established by law. Tate v. Board of Commissioners, 122 N.C. 661, 29 S.E. 60; Rhyne v. Lipscombe, 122 N.C. 650, 29 S.E. 57.
2. Section 12 of Article IV of the State Constitution reads as follows: "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a coordinate department of the government; but the General Assembly shall allot and distribute that portion of this power and jurisdiction which does not pertain to the Supreme Court among the other courts prescribed in this Constitution or which may be established by law, in such manner as it may deem best; provide also a proper system of appeals; and regulate by law, when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so far as the same may be done without conflict with other provisions of this Constitution."
3. Section 27 of Article IV of the State Constitution provides that "The several justices of the peace shall have jurisdiction, under such regulations as the General Assembly shall prescribe, * * * of all criminal matters arising within their counties *606 where the punishment cannot exceed a fine of fifty dollars or imprisonment for thirty days."
4. Under Section 12 of Article IV of the State Constitution, the General Assembly has power to define by statute the criminal jurisdiction of the superior court so long as it observes certain limitations inherent in other provisions of Article IV having no pertinency to the precise problem presented by this appeal. Rhyne v. Lipscombe, supra. The General Assembly has exercised this legislative power in express terms in the familiar statute now codified as G.S. § 7-63, which stipulates that "The superior court has original jurisdiction * * * of all criminal actions in which the punishment may exceed a fine of fifty dollars, or imprisonment for thirty days". State v. Wilkes, 233 N.C. 645, 65 S.E.2d 129. Since the criminal jurisdiction conferred upon justices of the peace by Section 27 of Article IV of the State Constitution is not exclusive in character, the General Assembly is even empowered by Section 12 of Article IV of the State Constitution to bestow upon the superior court original concurrent jurisdiction with justices of the peace of criminal offenses whose punishment cannot exceed a fine of $50 or imprisonment for thirty days. Williams v. Williams, 188 N.C. 728, 125 S.E. 482; Singer Sewing Machine Co. v. Burger, 181 N.C. 241, 107 S.E. 14; State v. Anderson, 80 N.C. 429.
5. Sections 2 and 14 of Article IV of the State Constitution authorize the General Assembly to provide for the establishment of courts inferior to the superior court. Rhyne v. Lipscombe, supra. This legislative power must be exercised by the General Assembly through general laws because Section 29 of Article II of the State Constitution, which was adopted in 1916, specifies that "The General Assembly shall not pass any local, private, or special act or resolution relating to the establishment of courts inferior to the Superior Court".
6. Under Section 12 of Article IV of the State Constitution, the General Assembly may bestow upon any court inferior to the Superior court other than the court of a justice of the peace either concurrent or exclusive original jurisdiction of general misdemeanors, i. e., misdemeanors punishable by a fine exceeding $50 or imprisonment exceeding thirty days. State v. Boykin, 211 N.C. 407, 191 S.E. 18; State v. Mills, 181 N.C. 530, 106 S.E. 677; State v. Brown, 159 N.C. 467, 74 S.E. 580; State v. Lytle, 138 N.C. 738, 51 S.E. 66; State v. Collins, 151 N.C. 648, 65 S.E. 617; State v. Shine, 149 N.C. 480, 62 S.E. 1080; Rhyne v. Lipscombe, supra. Under Sections 12 and 27 of Article IV of the State Constitution, the General Assembly may grant to such inferior courts concurrent original jurisdiction with justices of the peace of misdemeanors whose punishment cannot exceed a fine of $50 or imprisonment for thirty days. State v. Doster, 157 N.C. 634, 73 S.E. 111. And under Sections 12, 14 and 27 of Article IV of the State Constitution, the General Assembly may even grant to a municipal court exclusive original jurisdiction of misdemeanors committed within the corporate limits of the municipality and embraced within the jurisdiction of a justice of the peace. State v. Doster, supra; State v. Baskerville, 141 N.C. 811, 53 S.E. 742.
7. Where original jurisdiction of general misdemeanors has been taken from the superior court and vested exclusively in inferior courts, the General Assembly has power under Section 12 of Article IV of the State Constitution to divest the exclusive jurisdiction of the inferior courts, and grant the superior court concurrent original jurisdiction with the inferior courts of such general misdemeanors. The General Assembly has taken such action in Washington County and sixty-eight other counties by the statute embodied in G.S. § 7-64.
8. Where an inferior court has been given concurrent original jurisdiction with justices of the peace of misdemeanors punishable by a fine not to exceed $50 or imprisonment not to exceed thirty days, the General Assembly is empowered by Section 12 of Article IV of the State Constitution to enact appropriate legislation *607 transferring such original concurrent jurisdiction, either in whole or in part, from the inferior court to the superior court.
We are now confronted by the task of applying these constitutional provisions and these rules to the case at bar. In performing this judicial labor, we note that G.S. § 7-64 has no bearing on the present action. This statute operates only in cases where original jurisdiction of criminal actions has been taken from the superior court and vested exclusively in an inferior court. The defendant is being prosecuted for a misdemeanor originally cognizable by a justice of the peace and not by the superior court. Chapter 589 of the 1951 Session Laws does not undertake to establish a court inferior to the superior court. It merely changes the jurisdiction of an existing inferior court duly created on a former occasion. As a consequence, it does not fall under the ban of the provision of Section 29 of Article II of the State Constitution, which forbids the General Assembly to pass any local, private, or special act relating to the establishment of courts inferior to the superior court. State v. Horne, 191 N.C. 375, 131 S.E. 753. It is a far cry from Chapter 435 of the 1951 Session Laws, which was adjudged unconstitutional in State v. Thomas, supra, to Chapter 589 of the 1951 Session Laws. Chapter 435 of the 1951 Session Laws specifically stipulated that criminal cases transferred from the County Court of Greene County were to be tried by petit juries in the Superior Court of Greene County upon the original warrants rather than upon indictments in violation of Section 12 of Article I of the State Constitution; whereas Chapter 589 of the 1951 Session Laws clearly contemplates that criminal cases transferred from the Recorder's Court of Washington County are to be tried by petit juries in the Superior Court of Washington County upon indictments found by grand juries in conformity to Sections 12 and 13 of Article I of the State Constitution. There is, moreover, no sound basis for any suggestion that Chapter 589 of the 1951 Session Laws is invalid for disobedience to the 1929 statute codified as G.S. § 12-1, which provides that "No act, which by its caption purports to be a public-local or private act, shall have the force and effect to repeal, alter or change the provisions of any Public Law, unless the caption of said public-local or private act shall make specific reference to the Public Law it attempts to repeal, alter or change." This is true because one legislature cannot restrict or limit by statute the right of a succeeding legislature to exercise its constitutional power to legislate in its own way. 12 C.J., Constitutional Law, Section 238, 16 C.J.S., Constitutional Law, § 106.
The Recorder's Court of Washington County is a court inferior to the superior court in a constitutional sense. It was duly established under a general law, i. e., the County Recorders' Courts Act. This general law has conferred upon the Recorder's Court of Washington County this twofold criminal jurisdiction: (1) Concurrent original jurisdiction with justices of the peace of misdemeanors punishable by a fine not in excess of $50 or imprisonment not in excess of thirty days; and (2) exclusive original jurisdiction of general misdemeanors. G.S. § 7-222.
When all is said, Chapter 589 of the 1951 Session Laws merely does these two things: (1) It transfers from the Recorder's Court of Washington County to the Superior Court of Washington County concurrent original jurisdiction with justices of the peace of misdemeanors punishable by a fine not exceeding $50 or imprisonment not exceeding thirty days in cases where either the prosecuting attorney or the defendant makes a demand for a jury trial in the Recorder's Court; and (2) it transfers from the Recorder's Court of Washington County to the Superior Court of Washington County exclusive original jurisdiction of general misdemeanors in cases where either the prosecuting attorney or the defendant makes a demand for a jury trial in the Recorder's Court. This being true, Chapter 589 of the 1951 Session Laws represents a valid exercise by the General Assembly of the power vested in it by Section 12 of Article IV of the State Constitution to "allot and distribute that portion" of the power and jurisdiction of the judicial department of *608 the State "which does not pertain to the Supreme Court among the other courts prescribed in this Constitution or which may be established by law, in such manner as it may deem best".
In closing, we indulge the observation that the General Assembly has moved in a somewhat mysterious way to deprive defendants in criminal cases in the Recorder's Court of Washington County of their statutory right to be tried by a jury of six men. G.S. § 7-228. Since an applicable statute, i. e., G.S. § 15-177, confers upon such defendants the right to appeal to the superior court and there obtain a trial de novo before a petit jury, the General Assembly could have abolished jury trials in the Recorder's Court of Washington County by a direct enactment to that effect without transgressing the declaration of Section 13 of Article I of the State Constitution that "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." State v. Pulliam, 184 N.C. 681, 114 S.E. 394, 395; State v. Pasley, 180 N.C. 695, 104 N.C. 533; State v. Tate, 169 N.C. 373, 85 S.E. 383; State v. Hyman, 164 N.C. 411, 79 S.E. 284; State v. Lytle, supra; State v. Whitaker, 114 N.C. 818, 19 S.E. 376; State v. Crook, 91 N.C. 536. The General Assembly had the constitutional power, however, to select the round-about-way rather than the direct road to accomplish its purpose, even though its action has a tendency to impair the object of the statutes authorizing the establishment of courts inferior to the superior court. This object was thus stated by Chief Justice Clark in State v. Lytle, supra, 138 N.C. 738, 51 S.E. 69: "The object of the statute creating the police court is to relieve the superior courts of petty business, to relieve the taxpayers, and defendants also, of heavy costs, and to give a speedy trial, lightening jail expenses, and dispensing often with long imprisonment on detention till a term of court comes around with its jury and judge. There is no harm done, since an appeal always lies open to a convicted defendant to the superior court where he has the right of trial by jury; whereas to the acquitted defendant, or to one who takes no exception to his punishment, there is a relief from unnecessary delay and costs, as well as diminution of court expenses to the public."
The order adjudging Chapter 589 of the 1951 Session Laws to be unconstitutional, quashing the indictment, and remanding the cause to the recorder's court is set aside, and the cause is remanded to the superior court to the end that it may put the defendant on trial before a petit jury upon the indictment returned by the grand jury according to its customary course and practice.
Reversed.